1   MICHAEL ANTHONY SAAVEDRA
    C.D.C. NO. E07529
2   P.O.BOX: 3481
    CORCORAN, CA. 93212
3
    PRO SE PLAINTIFF
4

**FILED**

**APR 27 2015**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
              DEPUTY CLERK

5

6

7                  UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF CALIFORNIA
8                      SACRAMENTO DIVISION

9

10  MICHAEL ANTHONY SAAVEDRA,            CASE NO. 2:15-cv-0898 AC (PC)
                 PLAINTIFF,
11                                       PLAINTIFF'S PRO SE VERIFIED COMPLAINT
                                         UNDER THE FEDERAL CIVIL RIGHTS ACT
12  V.                                   (42 U.S.C. § 1983) FOR VIOLATIONS OF
                                         CIVIL RIGHTS.
13  KELLY HARRINGTON,
    California Department of Corrections
14  (C.D.C.) Associate Director;         DEMAND FOR JURY TRIAL.
    J. ROBERTSON,
15  C.D.C. Chief Classification Unit;
    MICHAEL RUFF,
16  C.D.C. Special Agent-In-Charge;
    C. CSER,
17  C.D.C. Correctional Counselor II;
    S. MC CARVER,
18  C.D.C. Chief Psychologist;
    S. PINA,
19  C.D.C. Security Threat Group
    Investigator/Lieutenant,
20               DEFENDANTS.

21

22

23

24

25

26

27

28

## I.

## INTRODUCTION

1.      This is a Civil Rights Action filed by Michael Anthony Saavedra, a State prisoner, for damages and injunctive relief under 42 U.S.C. § 1983, brought against California Department of Corrections (C.D.C.) officials and employees for having caused Plaintiff to be indefinitely and further retained in solitary confinement for over a decade without providing him with the most fundamental rights of Due Process: The opportunity to be heard at a meningful time and in a meaningful manner; including their failure to investigate and determine the reliability of the information used to keep Plaintiff in solitary confinement indefinitely for non-disciplinary and non-gang related reasons and whether that need for such confinement still exists; and their failure to provide Plaintiff with any meaningful and timely periodic reviews of such confinement that amount to more than just meaningless gestures.

2.      Plaintiff also brings suit against said Defendants for requiring him to jeopardize his personal safety and the safety of his family, by telling him that the only way he can get out of such solitary segregated confinement is if he will "debrief" (become an inmate informant ["jail-house snitch"]for them), which constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

3.      As a result of the Defendants' wrongful actions and omissions, they have acted with deliberate indifference to Plaintiff's serious mental health condition and needs, in violation of the Eighth Amendment to the United States Constitution.

//

1.

1    4.       These Defendants have also violated Plaintiff's Equal Protection

2    rights under the Fourteenth Amendment to the United States Constitution as a

3    class of one by not providing Plaintiff with the same Due Process and meaningful

4    opportunity to be heard as they have other similarly situated prisoners and for

5    subjecting plaintiff to disparate living conditions and programing in comparison

6    to other prisoners in similar circumstances.

7

8                **II.**

9             **JURISDICTION**

10

11    5.       This action is brought pursuant to 42 U.S.C. § 1983 to redress the

12    deprivation, under color of State law, of rights secured by the United States

13    Constitution. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343; and §§ 2201, 2202.

14    6.       Venue is proper in the Eastern District of California and the

15    Sacramento Division pursuant to 28 U.S.C. § 1391(b)(1),(2), in that all of the

16    Defendants in this action reside and perform their official duties in the

17    Sacramento Division with the exception of just one Defendant, and a substantial

18    part of events and/or omissions giving rise to the claims herein, occurred in

19    Sacramento.

20    7.       Moreover, if this case is transferred, it would have an irreparable

21    harm to Plaintiff by further delay and the continued harm to him by further

22    subjecting Plaintiff to two more years of psychological damages caused by such

23    long term isolation and solitary confinement and denial of any meaningful

24    rehabilitative and reintergration programs prior to his scheduled release from

25    prison. Plaintiff references a two year period as the standard amount of time

26    a Pro Se prisoners' suit will take to be initially screened and any injunctive

27    relief granted. In Plaintiff's last filing with this Court, in Saavedra v. Kernan,

28    no. 2:13-cv-1499-KJN P.,- the Court herein transferred it to the Fresno Division

1  and after close to two years now, the case still has not undergone initial

2  screening. Such a two-year delay will have a significant harm and effect on

3  Plaintiff and his case herein.

4

5                              III.

6                            **PARTIES**

7

8  8.       Plaintiff, Michael Anthony Saavedra, is, and was, at all times

9  mentioned herein, a prisoner of the State of California, in the custody of the

10 California Department of Corrections (C.D.C.) and imprisoned in solitary and

11 segregated confinement within the Department's Security Housing Unit (S.H.U.).

12 9.       Defendant Kelly Harrington, was at all times mentioned herein, the

13 C.D.C. Associate Director of High Security Transitional Programming, Division of

14 Adult Institutions. He was legally responsible for oversight of all the Security

15 Housing Units within C.D.C. and its Security Threat Group pilot policy "Step

16 Down Program", including its Departmental Review Board hearings. Defendant

17 Harrington is sued in both his official and individual capacities.

18 10.      Defendant J. Robertson, was at all times mentioned herein, the Chief,

19 C.D.C. Classification Unit and was also assigned to the C.D.C. headquarters in

20 Sacramento. Defendant Robertson was legally responsible for evaluating issues

21 related to S.H.U. placement and D.R.B. reviews. Defendant Robertson was also

22 reaponsible for ensuring Department compliance with regulations managing S.H.U.

23 terms and placement. Defendant Robertson is sued in his/her individual capacity.

24 11.      Defendant Michael Ruff, was at all times mentioned herein, the C.D.C.

25 Special Agent-In-Charge of the Office of Correctional Safety (O.C.S.) and

26 assigned to the O.C.S. office in Sacramento. He was legally responsible for the

27 supervision of the Gang Intelligence Operations and Security Threat Group (S.T.G.)

28 Investigators (as it relates to validations, debriefings, and S.T.G. ivestigations

                              3.

1   /intelligence) and has been a member of the Case by Case Departmental Review Board

2   (D.R.B.) hearings since its inception under the S.T.G. pilot program. Defendant

3   Ruff is sued in his individual capacity.

4   12.       Defendant C. Cser, was at all times mentioned herein, a C.D.C.

5   Correctional Counselor II and assigned to the C.D.C. headquarters in Sacramento.

6   He/she was legally responsible for completing prisoner file reviews and preparing

7   their cases for presentation to the D.R.B.. Defendant Cser is sued in his/her

8   individual capacity.

9   13.       Defendant S. Mc Carver, was at all times mentioned herein, the C.D.C.

10  Chief Psychologist of its Division of Health Care Services and assigned to its

11  Sacramento headquarters. He/she was legally responsible for the oversight of the

12  Mental Health Services Delivery System within C.D.C.'s prisons and was also

13  required to attend and advise D.R.B. hearings regarding individual prisoners'

14  mental health concerns. Defendant Mc Carver is sued in his/her individual

15  capacity.

16  14.       Defendant S. Pina, was at all times mentioned herein, a C.D.C.

17  S.T.G. Investigator/Lieutenant and assigned to Corcoran State Prison (C.S.P.).

18  He was legally responsible for reviewing and investigating prison gang activity

19  and prisoners' gang status at C.S.P. and to provide updates and clarification of

20  S.T.G. affilliates and conducting complex S.T.G. investigations and documenting

21  S.T.G. behavior and intelligence.Defendant Pina is sued in his individual capacity.

22  15.       Defendants at all times mentioned herein, acted under color of

23  California law and are each responsible in some manner for the Constitutional

24  violations and damages to Plaintiff alleged herein.

25  16.       Plaintiff respectfully requests a jury trial on these allegations.

26

27  //

28  //

**4.**

IV.

INTRODUCTION OF FACTS

17.     Plaintiff, Michael Anthony Saavedra, is a 45 year-old Mexican-American who grew up in the San Gabriel Valley area of Los Angeles, California, and is serving a 21 year sentence for a 1996 conviction of a car-robbery, and has a minimum release date of December 8, 2016.

18.     All of Plaintiff's adult and juvenile arrests and convictions have been for car-theft related offenses with one drug and gun possession charge. However, Plaintiff has no history of gang related arrests, convictions or police department contacts; as a juvenile or adult. Plaintiff is not a street gang or prison gang member.

19.     Throughout Plaintiff's incarcerations, C.D.C. officials and prison staff have repeatedly required Plaintiff to choose his classification and cell-mates based on his racial and geographical origin. Telling Plaintiff, if he is from Southern California, then he is a "Southern Hispanic" ("Sureno"). This label and categorization is common practice in the classification and housing of all C.D.C. prisoners and creates a racial and factional divide amongst C.D.C. prisoners and has led to the formation of its prison gangs and racial and factional tensions and violence.

V.

FACTS PERTAINING TO PLAINTIFF'S SOLITARY CONFINEMENT

20.     On April 15, 2004, Plaintiff was removed from the general population facility at Salinas Valley State Prison and placed in solitary confinement within its Administrative Segregation Unit for allegations of overfamiliarity with a female prison guard.

21.     Two days later, on April 17, 2004, after Plaintiff refused to debrief

5.

1  (become an inmate informant for the Investigatons Sevices Unit), prison officials

2  and the I.S.U.'s counterpart, the I.G.I. (gang unit) began developing and

3  approving an idefinite solitary confinement S.H.U. term for Plaintiff based on

4  their gang validation package which alleged Plaintiff was an associate of the

5  "Mexican Mafia" prison gang.

6  22.      As such, on January 31, 2008, after an odyssey of transfers from one

7  S.H.U. to another across the state, Plaintiff arrived at C.S.P.'s S.H.U. and

8  housed in solitary and segregated confinement.

9  23.      The following year, in 2009, Plaintiff filed a Civil Rights complaint

10 regarding said validation against said Salinas Valley State Prison officials and

11 guards in the Northern District Court (Saavedra v. Hedgpeth,et al; case no.C09-

12 0178 CRB), which was eventually settled in December of 2012.

13 24.      During the litigation of said case however, in October of 2010, C.S.P.

14 officials and guards began to develop and approve their "re-validation" of

15 Plaintiff as a Mexican Mafia associate and re-sentence him to indefinite and

16 solitary S.H.U. confinement due to the above litigation and pending 6 year

17 "review" approaching.[1]

18 25.      In July of 2011, over 6,000 C.D.C. prisoners initiated a state-wide

19 hunger strike in protest of the conditions in the S.H.U.s and the long-term

20 confinement within them based on the flawed C.D.C. gang validation process and

21 procedures and lack of any meaningful reviews and Due Process.

22 26.      As a result of said hunger strikes, pressure from the public and

23 media attention and California State Legislators, C.D.C. officials promised sea-

24 change policy revisions and "enhanced Due Process" in its prison gang validation

25 and S.H.U. confinement process and procedures by implementing its S.T.G. "Step

26 Down Program" and "Case by Case" D.R.B. reviews.

27 27.      The new (pilot) program not only promised "enhanced Due Process

28

---

[1].    Per C.D.C. Policy (C.C.R., Title 15 § 3378 (e) ), a validated prisoner with
an indefinite S.H.U. term, will only be considered (reviewed) for possible release from the S.H.U.
every 6 years unless he debriefs.

1   reviews" and a "behavior-based program","placing a very heavy empasis on

2   individual accountability rather than accountability based upon identification

3   alone", including "interpersonal interaction with the ultimate goal of re-

4   intergrating participating affiliates back into the general population" and have

5   "a committee to review [all previous] validations" (D.R.B.'s "Case by Case

6   reviews") (testimony of Michael Stainer, C.D.C. Deputy Director, at the February

7   25, 2013 California State Assembly Public Safety Committee hearing on C.D.C.'s

8   proposed S.H.U. reforms, also attended by Defendants Harrington and Ruff, whom

9   also testified).

10  28.        On October 25, 2012, C.D.C.'s D.R.B. began reviewing all previous

11  prison gang validations of those prisoners who've been in the S.H.U. the longest

12  allowing them to be present before said Board and to present their views and any

13  relevant evidence in their favor.

14  29.        As such, Plaintiff's case was reviewed by the D.R.B. on November 15,

15  2013, which was chaired by C.D.C. Director, Suzan Hubbard, and Defendant Ruff, in

16  which Plaintiff was physically present and was able to present his views and

17  evidence in contradiction to the 2010 re-validation and which said Board members

18  found to not be sufficient or indicative of evidence of gang activity and further

19  found no new or current evidence of gang activity in Plaintiff's file or any

20  disciplinary behavior warranting Plaintiff's continued S.H.U. confinement, thereby

21  making him eligible for release from the S.H.U., however, C.S.P.'s Gang Unit

22  Investigators (I.G.I.), present and representing Defendant Pina, chimed in,

23  switching positions from gang activity allegations to allegations that Plaintiff

24  has "safety concerns" with two allegedly defunct Mexican Mafia members (whom they

25  [C.S.P. I.G.I.] ironically claim are in "bad standings" and have alleged safety

26  concerns with the gang themselves), to which Plaintiff stated he did not, however,

27  30.        Due to the above allegations made by C.S.P. I.G.I. at the above

28  D.R.B. review, Chairwoman Mrs. Hubbard, elected to retain Plaintiff in the S.H.U.

7.

1   and instructed Defendant Pina to investigate said allegations of Plaintiff having
2   any alleged safety concerns by conducting interviews of Plaintiff's housing unit
3   staff regarding their daily observations of Plaintiff and his social interactions
4   with his fellow prisoners as well as conduct interviews with Plaintiff and all
5   relevant persons to determine the reliability and current applicability of such
6   stale information. Mrs. Hubbard told them they had to do this within one year in
7   which Plaintiff would be brought back before the D.R.B. again and the alleged
8   safety concerns issue would be reviewed as well as Plaintiff's release from S.H.U.
9   31.       Said D.R.B. also changed Plaintiff's gang status/classification to
10  "inactive".
11  32.       After said D.R.B. review of November 15, 2013, Plaintiff began
12  diligently gathering as much evidence as he possibly could which would contradict
13  and disprove any and all allegations of him having any type of safety concerns,
14  including educational achievements and "Letters of Support" from members of the
15  outside community and family/friends in favor of placing Plaintiff in a C.D.C.
16  pre-release "Re-Entry Hub" facility to assist in his transition back into society
17  and obtain necessary employment  skills to reduce his chances of recidivism and
18  any residual concerns for his safety.
19  33.       Defendant Pina, on the other hand, made no attempt to investigate
20  or interview Plaintiff or anyone at all, and instead, just days after receiving
21  his order to do so, he simply wrote a one page "update" containing one short
22  paragraph that re-listed the same old confidential reports they mentioned at
23  the November 15, 2013 D.R.B. review (which regard incidents as far back as 1996)
24  and stating that "as the date of this document, COR IGI has not uncovered any new
25  information indicating Saavedra's safety concerns with the EME have been resolved
26  or that said safety concerns do not exist [based on the evidence contained within
27  Saavedra's Central File]". This document ("update") was not given to Plaintiff
28  untill November of 2014 prior to his "pre-D.R.B. committe" infra.

8.

34.     On November 13, 2014, Corcoran officials held a "pre-D.R.B. committee
hearing" in anticipation of Plaintiff's upcoming D.R.B. hearing as ordered on
November 15, 2013 (supra at ¶¶29 & 30 herein).

35.     Plaintiff was present at said pre-D.R.B. committee hearing on November
13, 2014, as was Defendant Pina,the C.S.P. Associate Warden and other C.S.P.
staff members. This committee did nothing except say they were retaining Plaintiff
in solitary / single cell S.H.U. confinement pending Plaintiff's scheduled D.R.B.
hearing and D.R.B.'s own decision. At that time they asked Plaintiff if he had
any questions, in which Plaintiff then turned to Defendant Pina and asked him if
he had interviewed any of their new informants or any other persons who could
provide up-to-date information regarding the alleged safety concerns or the
housing unit staff and guards as Director Hubbard ordered. Defendant Pina replied
"No, I don't have to, I already wrote my update.". Plaintiff then had a stack of
declarations and other documents signed by alleged Mexican Mafia affiliates and
others whom C.S.P. I.G.I. (Defendant Pina) have classified as "currently active"
and in "good standings" (not having any safety concerns) who testify as to
Plaintiff being in good standings, well liked, their personal degree of social
interactions with him and that he has no safety concerns. Plaintiff also asked
Defendant Pina if he was going to interview the prisoners who recently "dropped-
out" (defected) who knew Plaintiff and were in his housing unit with Plaintiff
for years whom now turned informants and could give Defendant Pina an actual
update as to Plaintiff's standings or whether he has any safety concerns or is on
any alleged "hit list", etc... (as alleged). Defendant Pina said "Again, no,
I'm not going to interview anyone and I don't want these, give them to D.R.B.".

36.     On or about December 2, 2014, C.S.P. Correctional Counselor, J. Pasion,
appeared at Plaintiff's cell door and stated that the Classification Services Unit
Chief Robertson (Defendant) requested that he ask Plaintiff, if he was willing
to debrief. Plaintiff stated that, the question and manner of it seemed very

9.

1  unusual and asked why was he asking him, such a question. Counselor Pasion then
2  stated that " D.R.B. wants to know before they do your review". Plaintiff then
3  replied that he would not be willing to debrief because that would really give
4  him safety concerns, placing his life and his families lives at risk for
5  retaliation and attack and that he should not be required to debrief in order to
6  be released from the S.H.U. . Counselor Pasion then stated that he would let
7  the C.S.U. know Plaintiff's response. Plaintiff also told him, if they place
8  him in a minimum level "Re-Entry Hub" facility near his family, it would help
9  him to receive the rehabilitative, transitional and employment programs he will
10  need prior to his release from prison and also eliminate any safety concerns
11  because those are programing facilities for prisoners with less than 4 years to
12  go home and have no gang activity or active affiliates housed there. Plaintiff
13  also attempted to give Counselor Pasion his above stated Declarations and
14  documents which disprove any type of current safety concerns and the Letters of
15  Support, however, Counselor Pasion told Plaintiff it would be better if he
16  (Plaintiff) presented them to D.R.B. himself. He also told Plaintiff that his
17  case is very similar to prisoner Munoz' case whom informants also claimed he had
18  safety concerns, but upon Munoz' appearance and same type of evidence he presented
19  to them at his review, the D.R.B. released him from the S.H.U. to a general
20  population facility as they did not find that the alleged safety concerns still
21  existed or were reliable.
22  37.        This however, would never come to fruition for Plaintiff, because on
23  February 4, 2015, Defendants Harrington, Robertson, Ruff, Cser and Mc Carver held
24  Plaintiff's D.R.B. review hearing in Sacramento "in absentia", without allowing
25  Plaintiff to be present or any opportunity to be heard or to present his evidence
26  to them, despite the fact that he never refused to appear. These Defendants
27  therein ordered Plaintiff to remain in solitary segregated S.H.U. confinement
28  untill he paroles based on Defendant Pina's "update" and Plaintiff's "refusal to

1  debrief" (D.R.B. chrono of 2/4/15). They further ordered that Plaintiff's

2  indefinite solitary S.H.U. confinement not be reviewed again untill two years,

3  if he did not parole by then.

4

5                    **FACTS PERTAINING TO EIGHTH AMENDMENT**

6                              **RISK TO SAFETY**

7

8  38.          Defendants have a long standing policy and practice which they

9  commonly refer to as "Snitch, Parole or Die" as the only means for a validated

10 prisoner sentenced to an indefinite S.H.U. term, to get out of the S.H.U. (see,

11 In Re Steven M. Castillo, Sacramento Superior Court case no. 98F05216, June 25,

12 1999 ruling by Judge Ronald W. Tochterman).

13 39. The Defendants in this case have repeatedly told and documented that if

14 Plaintiff wants out of the S.H.U., he needs to debrief and because of "his refusal

15 to participate in the debriefing process, he will be retained in the S.H.U.

16 indefinitely unless he paroles or debriefs". Such a policy of holding Plaintiff

17 in isolated and solitary confinement in the S.H.U. for over a decade now unless

18 he debriefs is, as one Court put it, "Tantamaount to administrative segregation for

19 silence - an intolerable practice in modern society" (Griffen v. Gomez, N.D.Cal.,

20 case no. C-98-21038, slip op. at 11 of June 28, 2006).

21 40.          It has now been well recognized and well documented by C.D.C. and

22 the Courts that prisoners who debrief incur a substantial risk of serious harm to

23 themselves and to their families.[2] The combination of the crushing conditions in

24 the S.H.U., the policies designed to coerce prisoners to debrief, the lack of any

25 timely and meaningful periodic reviews or any effective means of obtaining release

26 from the S.H.U. without debriefing and the substantial risk of serious harm if

27 one does debrief, puts Plaintiff in an untenable position and constitutes an

28 _____

          2.     To debrief is to admit prison gang affiliation and inform on others,
thereby being labeled a "snitch", placing the individual and his family in severe danger of retaliation
or death. (see, Madrid v. Gomez , 889 F. Supp. 1146 at 1241 (N.D. Cal. 1995) ; Koch v. Lewis, 96 F.
Supp. 2d. 949 at 966,f.n.26 (D. Ariz. 2000); Lira v. Cate, 2009 U.S. DIST.LEXIS 91292 at *70, f.n.27
(N.D.Cal. 2009); and Wilkinson v. Austin, 545 U.S. 209 at 227 (2005).

                                    11.

1   unconstitutional threat to his and his families' safety.[3.]

2   41.        Plaintiff cannot successfully debrief because he is not a gang

3   affiliate and has no gang infornation to divulge. This is supported by the fact

4   that neither D.R.B. review hearings found any gang activity or association

5   evidence against Plaintiff. Moreover, Plaintiff refuses to manufacture information

6   against other prisoners to obtain his own release from the S.H.U. and has a well

7   grounded fear for his own safety and the safety of his family if he does

8   participate in any debriefing process or interviews.

9

10              FACTS PERTAINING TO DELIBERATE INDIFFERENCE

11          TO PLAINTIFF'S SERIOUS MENTAL HEALTH CONDITION AND NEEDS

12

13   42.        Plaintiff has been continually housed in solitary S.H.U. confinement

14   since April 15, 2004, without respite.

15   43.        For a prisoner in the S.H.U., let alone one who has been single-

16   celled for over a decade, the consequences of assignment to such confinement are

17   very harsh. Plaintiff is substantially deprived of human contact and human

18   interaction. The only avenue of communication with another prisoner is by speaking

19   loudly enough for the prisoner in the next cell, or a cell down the tier, to hear.

20   Guards, however, have the discretion to issue warnings and punish any loud

21   communications as rule violations; and if the communication is with a vlidated

22   prisoner, even just a greeting, may be, and has been, used by C.D.C. and I.G.I./

23   O.C.S. as "evidence" of "gang activity/association" to retain them in the S.H.U.

24   indefinitely. 95% of the prisoners in Plaintiff's housing unit are validated as

25   prison gang affiliates.

26   44.        Plaintiff spends days and nights without respite in a cubicle (cell)

27   the size of a small dog kennel in which he eats, sleeps and washes. Plaintiff's

28

---

3.        C.D.C. officials reported that on April 22, 1995, Anthony Moreno, Mexican
Mafia defector and informant, and three others, including Mr. Moreno's three young children, were
murdered in retaliation;allegedly by the gang (November 5, 2010, Declaration of Everett Fisher,
Litigation Coordinator, O.C.S.).

1  cell is all concrete except for a stainless steel sink/toilet. It has no desk or

2  stool and resembles a very small concrete cave which is very cold in the winter

3  and exremely hot in the summer. The ventilation is poor and the cell air vents

4  have not been cleaned out in over a decade, and are filthy with dust and debri.

5  45.        "Exercise" occurs in a fenced in cage in front of the S.H.U.

6  building and is also about the size of a small dog kennel in which are very

7  filthy and infested with pigeons and their droppings. Plaintiff is subject to

8  degrading nude strip-searches in these cages in cold rain and in front of others.

9  Said outdoor exercise time is commonly "cancelled" for various reasons (e.g; fog;

10  "shortage of staff"; routine "power cut-offs"; "staff meetings" / "training"...),

11  and if a prisoner is also scheduled for law library access, he must give up one

12  or the other. On average, Plaintiff receives outside time two to three times per

13  week for approx. two hours each time(approx. six hours total per week). The days

14  he does not receive yard, he is kept in lock-up within his cell.

15  46.        Plaintiff is also deprived of adequate cleaning supplies and means

16  to keep his cell clean (such as a mop/broom or disinfectant), resulting in

17  unsanitary living conditions and is allowed to shower only three times per week

18  for five minutes in duration, however, showers are also constantly "cancelled"

19  for the same above "reasons".

20  47.        Plaintiff also receives poor food rations which are served cold and

21  in a very unsanitary manner.

22  48.        Plaintiff's communication with loved ones and friends is also

23  subject to severe restrictions and limitations. Mail is extremely delayed (from

24  two weeks; up to a month), due to all S.H.U. mail being "screened" by C.S.P. I.G.I.

25  staff and is often even never received or delivered, including legal and attorney

26  correspondences. Visits with family and friends are extremely difficult to

27  schedule and are limited to one hour on weekends through a glass window and phone

28  with no physical contact. These visits are also recorded and monitored by guards

1  and video cameras.

2  49.         Despite the fact that Plaintiff's segregated confinement is for "non-
3  disciplinary reasons", he is not provided, nor able to participate in, any training
4  programs, nor work or vocational programs, no religious services or any type of
5  "pre-release" programs as almost all forms of human contact are prohibited in the
6  S.H.U.. It is quite simply, a human warehouse.

7  50.         To exacerbate matters, Defendants have implemented a new policy and
8  procedure at all S.H.U.'s and Administrative Segregation Housing Units requiring
9  the guards to hit a metal button on the cell doors with a metal pipe every half
10  hour as a measure to insure and record that they are doing their "security rounds".
11  At the same time, they also flash a light in the sleeping prisoners' eyes which
12  makes it impossible to sleep (being woke up by this every half hour). This form of
13  sleep deprivation has an adverse impact on Plaintiff's mental and physical health.

14  51.         Under said conditions of such long term confinement, Plaintiff
15  suffers from vision impairment, loss of weight, insomnia, anxiety , severe mental
16  depression, stress and fear of guards and prison staff.

17  52.         Plaintiff has been clinically diagnosed with Major Depressive
18  Disorder and Post Traumatic Stress Syndrome and is a "patient" in the C.D.C.'s
19  "Mental Health Delivery System" since his solitary confinement.

20  53.         The harm suffered by Plaintiff is further made worse by the fact
21  and information he received by his Corectional Counselor that D.R.B. held his
22  review on February 4, 2015, "in absentia" without his knowledge and without giving
23  him any opportunity to present his views to them and knowing he will remain in the
24  S.H.U. until he paroles for non-disciplinary reasons based on false allegations
25  and because he will not risk his life or his families' by debriefing.

26  //
27  //
28  //

**14.**

FACTS PERTAINING TO PLAINTIFF'S EQUAL PROTECTION CLAIMS

54.     Defendant's own regulations, policy and procedure, including under the United States Constitution, require them to provide such segregated prisoners the most fundamental and basic Due Process such as the opportunity to be heard at a meaningful time and in a meaningful manner in any hearing regarding their decision to segregrate indefinitely. Such Due Process rights also include meaningful periodic reviews of such confinement that amount to more than just hollow gestures.

55.     According to the Defendants' own policy and admissions, they have granted and given over 400 similarly situated prisoners in the S.H.U., D.R.B. Case by Case review hearings regarding their indefinite S.H.U. confinement, in which all such prisoners were present at such D.R.B. hearings which resulted in over 65% of said prisoners being released from the S.H.U. (January 7, 2014 C.D.C. Memorandum and the February 11, 2014 State Senate hearing transcript).

56.     Moreover, C.D.C.'s "Instructional" and "Informational" Memorandums also emphasize the prisoners' "appearance" at the D.R.B. reviews and "encourages the inmate to participate in the review during the D.R.B. hearing" (Memorandum of August 9, 2013).

57.     As such, the Defendants herein have given the above stated prisoners and others similarly situated as Plaintiff (i.e; confinement for alleged safety concerns) the opportunity to personally appear before the critical decision makers (D.R.B.) inorder for them to be heard and present their views on the matter.

58.     Defendants herein did not allow Plaintiff the same opportunity to be present and to present his views in any meaningful manner when and before they held his D.R.B. review hearing and decided to retain him indefinitely in solitary S.H.U. confinement.

59.     Such disparate treatment of Plaintiff was clearly intentional (once he refused to debrief) and an arbitrary action that impinged on his most basic

15.

1    fundamental rights and did not reasonably relate to any legitimate penological
2    interests.

3

4                    FACTS PERTAINING TO DISPARATE LIVING AND PROGRAMING

5

6    60.              Defendants' own regulations (C.C.R., Title 15) and the United States
7    Constitution's Equal Protection Clause of the Fourteenth Amendment require the
8    Defendants to treat Plaintiff equally under the law.

9    61.              As stated herein at ¶¶ 43-50, Plaintiff's treatment regarding his
10   living conditions and programs are vastly more punitive and restricted, not only
11   of those in general population, but also those similarly situated (confined in
12   special or segregated housing units for "safety concerns").

13   62.              In contrast to Plaintiff's solitary and isolated confinement, other
14   such prisoners whom are segregated for non-disciplinary reasons (i.e; "for their
15   safety"), receive weekly phone calls, contact visits for 3-4 hours, group communal
16   religious services, class room instruction, daily use of outdoor recreational
17   equipment (i.e; basket ball, gym bag, dip bars, hand ball, etc...), work programs
18   and daily 15-minute showers --- without requiring them to debrief. Plaintiff's
19   confinement for the same alleged reasons is far from comparable (cf. ¶¶ 42-50
20   supra), despite the fact that the Defendants' regulations (C.C.R., Title 15 §§§
21   3170.1.(f); 3343(f); and 3343(j)) allows such prisoners to receive such, yet
22   the Defendants' herein are arbitrarily denying them to Plaintiff by their action
23   and retention of Plaintiff in the S.H.U. rather than any other alternative
24   housing at any one of their over 50 prison facilities in the state other than
25   Corcoran S.H.U. and solitary confinement.

26   63.              Based on the above stated facts, such disparate treatment to Plaintiff
27   is clearly intentional and an arbitrary action that is not reasonably related to
28   any legitimate penological interests.

                                      16.

# VI.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

#### (FEDERAL DUE PROCESS)

64.     Plaintiff realleges and incorporates by reference, all previous paragraphs of this complaint.

65.     Plaintiff's indefinite and continuing solitary confinement in the S.H.U. under the conditions as stated herein at ¶¶ 42-53 supra, constitutes a significant and atypical hardship.

66.     Plaintiff's indefinite solitary confinement in the S.H.U. violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that the named Defendants herein have:

    a).   Retained Plaintiff in solitary S.H.U. confinement indefinitely for reasons that are contrary to such placement;

    b).   On the basis of allegations that are false, unreliable and stale;

    c).   Failed to investigate the allegations and or determine whether they are reliable and still exist;

    d).   Failed to give Plaintiff an opportunity to present his views at a meaningful time and in a meaningful manner;

    e).   Failed to provide Plaintiff with any periodic reviews amounting to more than meaningless gestures;

    f).   Placed Plaintiff in an inescapable predicament that violates the fundamental principles of Due Process of Law; requiring him to debrief as the only means of being released from the S.H.U. by divulging information he does not have;

    g).   Utilizing false and stale allegations of "safety concerns"

17.

1  and debriefing as a pretext for indefinite solitary confinement in the S.H.U..

2  67.      When the the D.R.B. Chairwoman ordered Defendant Pina on November

3  15, 2013, to conduct an investigation into the stale allegations of Plaintiff

4  having "safety concerns", to determine whether they were reliable and still

5  exist or if Plaintiff could be released to the general population, and he failed

6  to do so (merely rubber-stamping old documents) as stated herein at ¶¶ 29-35

7  supra, he violated Plaintiff's Due Process rights under the Fourteenth Amendment

8  to the United States Constitution.

9  68.      When Defendant Pina refused to allow Plaintiff to present his views

10  and defense to him on November 13, 2014, at the pre-D.R.B. committee regarding

11  the alleged safety concerns, as stated herein at ¶¶ 34-35 supra, he violated

12  Plaintiff's Due Process rights under the Fourteenth Amendment to the United States

13  Constitution.

14  69.      When Defendants Harrington, Robertson, Ruff, Cser and Mc Carver held

15  Plaintiff's D.R.B. hearing in Sacramento on February 4, 2015, without allowing

16  Plaintiff to be present or any meaningful opportunity to present his views to

17  them at a meaningful time and in a meaningful manner, as stated herein at ¶¶ 36-

18  37 supra, and failed to conduct a meaningful periodic review of Plaintiff's

19  indefinite solitary S.H.U. confinement that amounted to more than a hollow

20  and meaningless gesture, they violated Plaintiff's Due Process rights under the

21  Fourteenth Amendment to the United States Constitution.

22

23  SECOND CAUSE OF ACTION

24  (EIGHTH AMENDMENT CLAIM-RISK TO SAFETY)

25

26  70.      As stated herein at ¶¶ 36-41 supra, the Defendants herein have

27  repeatedly told and documented that if Plaintiff wants out of the S.H.U., he needs

28  to debrief and because of his refusal to do so, he will remain in the S.H.U.

18.

1   indefinitely.

2   71.          The above was told to Plaintiff by Defendant Pina at every C.S.P.

3   classification hearing in which Defendant Pina attended.

4   72.          This is also supported by the fact that Defendant Robertson ordered

5   Corcoran  Counselor to ask Plaintiff if he was willing to debrief as stated

6   herein at ¶¶ 36-37 supra.

7   73.          Defendants Harrington,Robertson, Ruff, Cser and Mc Carver also

8   documented the above (¶ 70 supra),placing heavy emphasis on Plaintiff's refusal

9   to debrief in their February 4, 2015 D.R.B. "Action Chrono".

10  74.          Plaintiff cannot successfully debrief because he is not a gang

11  affiliate and has no information to divulge (The D.R.B. of 2013, labeled him as

12  "inactive"), but the risk for retaliation as stated herein at ¶ 40, f.n. 2 ,

13  would undeniably jeopardize his personal safety and the safety of his family.

14  75.          Moreover, Defendants herein were aware of said risk to Plaintiff

15  through the prisoner hunger strikes and the State Senate Committee Hearings

16  previously mentioned at ¶¶ 25-27 supra, and via the numerous prisoner rights

17  cases litigated against C.D.C. from as far back as 1995 (Madrid v. Gomez, supra),

18  as such risk to prison "snitches" is long standing, pervasive, well-documented

19  and obvious. As such, these Defendants acted with deliberate indifference to the

20  possible consequeces to Plaintiff and his family when they acted as stated herein.

21  76.          Wherefore, the requirement that Plaintiff debrief as the only means

22  to be released from solitary S.H.U. confinement, in combination with the crushing

23  conditions in the S.H.U., the pressure put on prisoners to debrief and the lack

24  of any meaningful means of obtaining release from such confinement nor any

25  meaningful and timely reviews of such indefinite restraint, puts Plaintiff in an

26  untenable position (a Hobson's choice), forcing a "no win" election causing

27  Plaintiff mental anguish, pain and suffering and constitutes an unconstitutional

28  threat to Plaintiff's safety and that of his family.

77.          As such, Defendants Harrington, Robertson, Ruff, Cser, Mc Carver and
Pina have violated Plaintiff's rights under the Eighth Amendment to the United
States Constitution.

THIRD CAUSE OF ACTION

(DELIBERATE INDIFFERENCE TO PLAINTIFF'S MENTAL HEALTH)

78.          As stated herein at ¶¶ 42-53 supra, Plaintiff has been continually
housed in solitary and isolated confinement for over a decade without respite
for "non-disciplinary reasons" in conditions that are unconstitutional and lack
any type of meaningful social or human contact/interaction.

79.          As a result, Plaintiff suffers from Major Depressive Disorder and
Post Traumatic Stress Disorder and has been in the C.D.C.'s Mental Health Delivery
System ever since due to such development of said serious mental health conditions.

80.          As such, these Defendants herein are well aware of Plaintiff's mental
health conditions and the serious risk and affect to such prisoners mental health
from such long term solitary and isolated confinement, from as far back as 1995
(Madrid v. Gomez, supra) and more recently from the State Senate Committee Hearings
of August 24, 2011 and February 11, 2014, in which renowned mental health experts
and psychology professors testified as to such effects and risks, which is further
emphasized to these Defendants by the recent Coleman v. Brown, Court order of
April 10, 2014 and C.D.C.'s related Memorandum of August 14, 2014, requiring that
all prisoners who are in Segregation Housing Units for Non-Disciplinary Segregation
purposes (for safety concerns) and are participants in the Mental Health Delivery
System, be removed from such segregation confinement and transferred to a general
population facility of "less restrictive housing within 72 hours", to address the
Court's concerns with the increased risk of suicide among such prisoners in
segregation".

81.          Wherefore, Defendants Harrington, Robertson, Ruff, Cser, Mc Carver

20.

1   and Pina acted with deliberate indifference to Plaintiff's serious mental health

2   condition and needs when as described herein at ¶¶ 42-53 and ¶¶ 78-80 supra,

3   they decided to retain Plaintiff indefinitely in solitary confinement in such

4   described conditions for non-disciplinary reasons with out Due Process and for

5   his refusal to debrief, without considering any alternative / less restrictive

6   housing other than the S.H.U. despite their knowledge and admission that such

7   long term isolated and solitary S.H.U. confinement poses a serious risk to such

8   prisoners, in violation of the Eighth Amendment to the United States Constitution.

9

10                          FOURTH CAUSE OF ACTION

11                (FOURTEENTH AMENDMENT-EQUAL PROTECTION CLAIMS)

12

13  82.        As stated herein at ¶¶ 54-59 supra, the Defendants herein have

14  intentionally and arbitrarily denied Plaintiff his most basic fundamental Due

15  Process rights, including a meaningful opportunity to be heard as they have (and

16  are required to) give(n) to similarly situated prisoners.

17  83.        As such, when Defendants Harrington, Robertson, Ruff, Cser, Pina

18  and Mc Carver did not allow Plaintiff to present his views at said hearings as

19  stated herein at ¶¶ 33-37 supra, as they have allowed other similarly situated

20  prisoners to do so as stated herein at ¶¶54-59 supra, they have violated

21  Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment

22  to the United States Constitution, as a class of one.

23  84.        Furthermore, when Defendants Harrington, Robertson, Ruff, Cser

24  and Mc Carver ordered Plaintiff to be retained indefinitely in solitary S.H.U.

25  confinement as stated herein at ¶ 37 supra, for non-disciplinary and non-gang

26  activity reasons rather than an alternative facility and without the same

27  comparable living conditions and programming as provided to other such similarly

28  situated prisoners as described herein at ¶¶ 60-63 supra, they have violated

1  Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment

2  to the United States Constitution, as a class of one, in an arbitrary manner that

3  impinge on his most basic fundamental rights as described herein at ¶ 37 supra,

4  and does not reasonably relate to any legitimate penological interests.

5  85.        This is further supported by the fact that within their documented

6  report of February 4, 2015, these Defendants stated "The D.R.B. noted Indeterminate

7  S.H.U. is not a long term placement option for inmates with safety concerns;

8  however, noted is Inmate Saavedra remains adamant in his refusal to participate

9  in the debriefing process". Eventhough this is not required of other similarly

10  situated prisoners inorder for them to receive the living conditions and programs

11  afforded to them as described herein at ¶ 62 supra, and is therefore evidence that

12  Plaintiff is receiving disparate treatment for reasons not reasonably related to

13  any legitimate penological interest and is done in an arbitrary and intentional

14  manner.

16                                  VII.

17                               CAUSATION

19        As a direct and proximate result of the aforementioned acts and

20  omissions on the part of the Defendants, Plaintiff has suffered and continues to

21  suffer general and special damages in an amount to be proven at trial.

22        Plaintiff has no plain, adequate or complete remedy at law to redress

23  the wrongs herein. Plaintiff has been and will continue to be irreparably injured

24  by the conduct of the Defendants unless the Court grants the declatory and

25  injunctive relief which Plaintiff seeks .

26  //

27  //

28  //

VIII.

EXHUSTION OF ADMINISTRATIVE REMEDIES

86.        Plaintiff has exhausted all of his available administrative remedies as to all of the issues raised herein per C.C.R., Title 15 § 3376.1 and C.D.C. 602 Inmate Appeal log no. CSPC-6-15-01202.

IX.

PRAYER FOR RELIEF

Wherefore, Plaintiff herein respectfully prays for the following relief :

1.    Issue a declatory judgment that the Defendants' acts and failures to act as described herein violated Plaintiff's rights under the United States Constitution and as otherwise alleged herein;

2.    Award Plaintiff monetary damages, compensatory and punitive, in an amount to be determined at trial;

3.    Award Plaintiff thd cost of suit and reasonable attorneys' fees;

4.    Grant Plaintiff a trial by jury; and,

5.    Grant Plaintiff such other and further relief as the Court deems just and proper.

X.

VERIFICATION

I, Michael Anthony Saavedra, hereby declare under penalty of perjury that the foregoing is true and correct, executed on April 17, 2015, at Corcoran,

23.

1  California.

2                                          _Michael Anthony Saavedra_

3                                          Michael Anthony Saavedra
                                           Pro Se Plaintiff

4

5            I, Michael Anthony Saavedra, further declare that on April 21, 2015,

6  I submitted the complaint herein to Corcoran Prison Counselor, J. Pasion for

7  mailing to the court per Institutional policy and procedure in a sealed envelope,

8  with postage thereon fully paid. The envelope was adressed as follows:

9            Clerk of the U.S. District Court,
             Eastern District of California
10           501 I st. # 4-200
             Sacramento, Ca. 95814

11

12           I declare under penalty of perjury that the foregoing is true and

13  correct.

14                                         Michael Anthony Saavedra
                                           Pro Se Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28